2003 SD 139

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Tancrede HAMEL, Defendant and Appellant.**

**No. 22753.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 2003.

Decided Dec. 3, 2003.

Lawrence E. Long, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Bryan T. Andersen, Pennington County Public Defender, Rapid City, South Dakota, Attorneys for defendant and appellant.

PER CURIAM.

[¶ 1.] Tancrede Hamel appeals his sentences for second degree rape, aggravated assault and criminal pedophilia. We affirm.

## FACTS

[¶ 2.] This appeal arises out of Hamel's rape of his twenty-five-year-old girlfriend, I.M. (mother), and her eleven-year-old daughter, R.M. Hamel, age twenty-seven, lived with mother and several of her minor children in Rapid City. On the night of June 21–22, 2002, Hamel and mother were in bed watching a pornographic movie. At approximately 3:00 a.m., Hamel told mother that he wanted to have sex. Mother declined because Hamel had been drinking, but Hamel persisted. Hamel decided that he wanted to have anal sex with mother because she was menstruating. When mother refused, Hamel became extremely upset. He grabbed mother, turned her over, pulled down her shorts and underwear, smeared himself with Vaseline and proceeded to have forced anal sex with mother despite her protests.

[¶ 3.] As Hamel was raping mother, he told her that he wanted to "fuck" R.M., mother's eleven year old daughter. Mother became extremely upset and told Hamel

"no." Hamel then produced a knife, held it to mother's back and told her "I will kill you and have sex with her anyway." As mother continued her protests, Hamel grabbed her hair, yanked her head back and repeated his threat to kill her if she did not get R.M. Eventually, Hamel threatened to hurt or kill mother's whole family if she did not get R.M.

[¶ 4.] Fearing for her life and the life of her children, mother went to the room where the children were sleeping, woke up R.M. and had the child come back to her room and lay on the bed. After mother sat down on the bed next to R.M., Hamel instructed her to take off R.M.'s pants and underwear. Mother refused, but Hamel prodded her with his knife and threatened to hurt her. Hamel told mother that if she did not remove R.M.'s clothing he would and that he would hurt the child and mother. Mother then told R.M. to take her pants off, but the child refused. As mother began to pull R.M.'s pants down herself, Hamel leaned over and ripped them off. Hamel told R.M. to lay there and that if she screamed he would kill mother. Hamel also told mother that if she got up and went anywhere he would kill the child. Hamel then wedged a pair of scissors in the door jam of the bedroom door as a way of locking it and to keep mother from leaving. After sealing the door, Hamel smeared himself with Vaseline and climbed on top of R.M. repeating his threats to stab and kill her and mother if R.M. screamed. Despite R.M.'s pleas for him to stop and protests that it hurt, Hamel penetrated R.M. both vaginally and anally causing the child to bleed. Mother could only cry and hold R.M.'s hand as she felt helpless.

[¶ 5.] When Hamel finished with R.M., he told her to go take a bath. Before the child got up from the bed, Hamel asked, "you want me to keep fucking you? Want me to fuck you or do you want me to do your mom in the ass while you watch?" R.M. looked at mother who gave an affirmative indication so that Hamel would stop hurting the child. R.M. then said, "yes" and Hamel again told R.M. to go take a bath. As R.M. was leaving the room, Hamel again began to rape mother, penetrating her both vaginally and anally.

[¶ 6.] At some point later in the night, Hamel fell asleep on the living room couch and mother and R.M. were able to flee the residence and call law enforcement from a nearby service station. Officers described mother as crying hysterically when they arrived on the scene. Hamel was taken into custody and eventually indicted for: one count of second degree rape of mother; one count of aggravated assault of mother; one of count of criminal pedophilia relating to R.M.; and, one count of aggravated assault of R.M. A part two information was also filed alleging Hamel had a prior felony conviction in the U.S. District Court for South Dakota for transporting a minor with intent to commit sexual abuse.

[¶ 7.] A plea bargain was struck and Hamel pled guilty to the rape and assault charges relating to mother and to the criminal pedophilia charge relating to R.M. in exchange for the dismissal of the assault charge relating to R.M. and the dismissal of the part two information. The trial court later sentenced Hamel to life without parole for criminal pedophilia, a consecutive twenty-five years in the penitentiary for second degree rape and a consecutive fifteen years for aggravated assault. Hamel appeals.

ISSUE

[¶ 8.] **Do Hamel's sentences constitute cruel and unusual punishment?**

[¶ 9.] Hamel argues that his life sentence for criminal pedophilia plus consecutive twenty-five and fifteen year sentences for rape and aggravated assault constitute cruel and unusual punishment in violation of the Eighth Amendment. Evaluation of cruel and unusual punishment challenges begins with an assessment of the proportionality of the sentence to the crime. *State v. Pugh,* 2002 SD 16, ¶ 16, 640 N.W.2d 79, 84. This Court resorts to an intra-jurisdictional and inter-jurisdictional assessment of the proportionality of a sentence only if a threshold comparison of the crime committed and the sentence imposed leads to an inference of "gross disproportionality." *Id.* In this inquiry, this Court considers the conduct involved and any relevant past conduct with utmost deference to the legislature and the sentencing court. *Id.* at ¶ 19, p. 85. In addition:

> [This Court takes] "an extremely deferential review of sentencing—generally, a sentence within the statutory maximum will not be disturbed on appeal." [This Court] will not "engage in appellate re-sentencing, or [ ] 'micromanage the administration of criminal justice' in South Dakota, even when individual trial judges impose widely different punishments for the same offense."

*State v. Stahl,* 2000 SD 154, ¶ 5, 619 N.W.2d 870–871, 872 (citations omitted).

[¶ 10.] Hamel is now twenty-nine years old. He has a record of violent behavior with prior arrests and/or convictions for incidents of domestic violence, assault and resisting arrest. He has a particularly disturbing history of violent sex offenses with women and young girls that includes incidents of drunken rage, domestic violence, rape, assault and attempted rape. In July 2000, he was arrested and convicted for assault after administering a beating to mother for refusing to perform oral sex on him. Hamel beat mother so severely that she passed out at least twice as a result of his hitting her, kicking her and slamming her head against the couch and floor. In July 2001, Hamel was again arrested after a drunken attack on mother's sister in which he grabbed her by the neck, threw her against the wall, grabbed her upper leg and lifted it up telling her that she was "his." Hamel's record is not limited to abuse of adults. In 1996, he was convicted in the U.S. District Court for the District of South Dakota for transportation of a minor with intent to commit sexual abuse. The conviction was obtained after Hamel, serving as a volunteer reserve police officer in Pine Ridge, picked up a fourteen year old girl and transported her to an isolated area near White Clay, Nebraska where he raped her on the hood of his car before returning her home.

[¶ 11.] In the present case, Hamel was charged with violent offenses which, because of his habitual offender status, carried maximum possible penalties of one mandatory life term in the penitentiary plus a second life term plus fifty years and maximum fines of $75,000. The charges alone were, in a manner of speaking, a bargain as, given the number of assaultive acts and incidents of penetration committed by Hamel, it certainly would have been possible to charge him with additional counts of assault and rape. The trial court even noted during sentencing that Hamel was not charged with all of the crimes he could have been. Plea bargaining and dismissal of the habitual offender information further worked to Hamel's advantage. He gained the ability to argue for something less than a single life term plus forty years in the penitentiary with maximum fines of $65,000. Out of the maximum, he received a sentence of life plus forty years. Given the heinous nature of his crime of raping a

mother and her daughter at knifepoint in the presence of one another and Hamel's violent history, his propensity for violence and the dim prospects for rehabilitation identified in his psychological evaluation, it cannot be said that this sentence was grossly disproportionate.[1] As the trial court ably articulated during sentencing, it had to protect society from a risk that could not be altered. Its sentence accomplished that.

[¶ 12.] Affirmed.

[¶ 13.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.

---

1. Hamel's psychological evaluation provided in pertinent part that: he, "is likely to continue to represent a risk of harm to others for the foreseeable future;" that he, "presents as a very disturbed man who has sexually deviant proclivities, narcissistic and antisocial personality traits, and alcohol dependence;" and that he, "is currently estimated to represent a high risk [to reoffend] and should be allowed no unsupervised contact with anyone under the age of 18 years."